IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>               Plaintiff,<br><br>v.<br><br>GARY CAMP,<br>               Defendant. | Case No. 5:09-CR-418 (DNH)<br><br>DEFENDANT CAMP'S<br>MEMORANDUM OF FACTS<br>AND LAW |

Defendant Gary Camp, by and through his counsel of record, James R. McGraw, Esq., hereby files its memorandum of facts and law.

Respectfully submitted this 8th day of November, 2010.

*/s/ James R. McGraw, Esq.*
JAMES R. McGRAW, ESQ.
Attorney for Defendant Camp
Bar Roll # 102169

## I. INTRODUCTION

On or about November 1st, 2010, the government filed its trial brief in the above-referenced case. In its brief, the government set forth the factual background for the charges brought against Defendant Gary Camp. The brief went on to describe the law related to those charges and several anticipated evidentiary issues.

This memorandum constitutes a response to the government's trial brief. Below, Defendant offers clarifications and corrections to the government's description of the law in this case. Additionally, Defendant responds to the evidentiary issues raised by the government.

## II. DEFENDANT CAMP'S RESPONSE TO THE GOVERNMENT'S STATEMENT OF THE LAW IN THIS CASE

### A. CONSPIRACY

The government cites three elements that they must prove in order to establish a conspiracy. Although Defendant does not dispute that there are three elements, the elements cited by the government do not mention that a defendant must have specific intent to commit the offenses that are the objects of the conspiracy.

The Second Circuit has held that in order to establish a conspiracy, the government must show that: (1) "the defendant agreed with at least one other person to commit an offense"; (2) "the defendant knowingly participated in the conspiracy with the specific intent to commit the offenses that were the object of the conspiracy"; and (3) "during the existence of the conspiracy, at least one of the overt acts set forth in the indictment was committed by one or more of the members of the conspiracy." *United States v. Downing*, 297 F.3d 52, 57 (2d Cir. 2002), *citing United States v. Salameh*, 152 F.3d 88, 145 (2d Cir. 1998).

1

The government's trial brief goes on to cite case law stating that a conspiracy may be proven by circumstantial evidence. Defendant does not dispute that governing case law supports that proposition, but it is important to note that the Second Circuit has added a caveat. A conspiracy may be shown using circumstantial evidence, "*provided* such evidence establishes...the defendants' knowledge of 'the essential nature of the plan and their connections with it.'" *Downing*, 297 F.3d at 57, *quoting Blumenthal v. United States*, 332 U.S. 539, 557 (1947)(italics added). This caveat is extremely important in this case where, as the government admits, "there was no direct connection between the insider - Queri - and defendant Camp."

## B. SECURITIES FRAUD THROUGH INSIDER TRADING

Defendant agrees with the requisite elements of securities fraud through insider trading set forth in the government's trial brief, however, the government fails to provide any description of the mens rea requirement which applies to both the charge of securities fraud and the charge of tender offer fraud.

In order to establish either securities fraud or tender offer fraud, the government is required to prove that a defendant "willfully" violated a federal securities law, rule, or regulation. Establishing a "willful" violation presents a heavy burden. The Second Circuit states that a defendant acts "willfully" when he or she intended to commit the prohibited act and is shown to have had some "evil purpose." *United States v. Dixon*, 536 F.2d 1388(2d Cir. 1976), *citing United States v. Peltz*, 433 F.2d 48 (2d Cir. 1970) and Herlands, 21 U. of Va. L. Rev. at 147-48.

The government is required to prove that Defendant's alleged violations were "willful" in addition to establishing each of the other elements listed in the government's trial brief.

2

## C. TENDER OFFER FRAUD

Although the defendant is in agreement with the elements of tender offer fraud as set forth in the government's trial brief, the government's discussion of the law is selective and fails to provide the Court with a complete description of the elements which the government is required to prove beyond a reasonable doubt.

In its trial brief, the government suggests that an alleged Rule 14b-3 violation requires less proof than a Rule 10b-5 violation. In support of its allegation, the government claims that Rule 14b-3 does not require a defendant to know whether "substantial steps" toward a tender offer have been taken nor does it require a breach of a fiduciary duty by a tipper. The government's claims do not present a full, accurate picture of the Rule 14b-3 requirements. The government cites case law supporting its claim that Rule 14b-3 does not require proof of a breach of a fiduciary duty, however does not mention that the law explicitly requires that a defendant must know they are in possession of nonpublic, material information and that the information came from an insider with a statutorily-specific status.

The government also alleges that a defendant is not required to know that information relates to a tender offer, so long as the information in fact did so relate. This notion has been accepted by the Courts, but with an important caveat. The Southern District of New York, in a decision affirmed by the Second Circuit, recognized that a defendant does not necessarily need knowledge of a tender offer, but "[s]ince there is 'no general duty to refrain from trading on material nonpublic information,' the defendant must have believed that the information related to, or most likely related to, a tender offer in order to impose criminal liability." *U.S. v. Cassese*, 290 F.Supp.2d 443, 450 (S.D.N.Y. 2003), *aff'd*, 428, F.3d 92 (2005) (*quoting* Cassese Jury Charge at 12).

3

The requisite showing that defendant believed that the information related to a tender offer stems from demand on the government to prove that the defendant acted "willfully." *Cassese*, 290 F.Supp.2d at 450. To act willfully the defendant must intend to "do something that the law forbids" and do so "with a bad purpose to disobey and disregard the law." *Id*. Although no actual knowledge of a tender offer is required, the mens rea requirement imposed by 15 U.S.C. § 78ff(a) obligates the government to show the defendant held some belief that the information related to a tender offer in order to show the defendant had a "realization" of wrongful conduct under the securities law. *Id* (citing *U.S. v. Peltz*, 433 F2d 48, 55 (2d Cir. 1970)). The United States Supreme Court recognized the effect a mens rea requirement on similar facts. In *Liparota v. United States*, the government was not required to prove actual knowledge of federal agency jurisdiction, but there was a remaining issue whether some knowledge was necessary. 471 U.S. 419 (1985). The Southern District of New York, in an opinion affirmed by the Second Circuit, analyzed the approach of the Supreme Court as follows:

> "The Supreme Court has 'recognized that the mental element in criminal law encompasses more than the two possibilities of 'specific' and 'general intent...With regards to its holding in *United States v. Yermian*, 468 U.S. 63, 104 (1984), the Supreme Court further noted, 'although the Court held that the Government did not have to prove actual knowledge of federal agency jurisdiction, the Court explicitly reserved the question whether some culpability was necessary with respect to the jurisdictional element." *Liparota*, 471 U.S. at 431. In the *Yermain* case, the jury was given a 'reasonable-forseeability' standard and instructed without objection from the prosecution that the government must prove the respondent 'knew or should have known' that his false statements were made within the jurisdiction of a federal agency." *Cassese*, 290 F.Supp.3d at 450.

In conclusion, the defendant agrees with the elements that the government's trial brief sets forth but the government has failed to provide the court with an adequate discussion of the law.

4

# III. DEFENDANT CAMP'S RESPONSE TO EVIDENTIARY ISSUES RAISED BY THE GOVERNMENT

## A. WIRE FRAUD CONVICTION MORE THAN TEN YEARS OLD LACKS PROBATIVE VALUE

The government asserts that Federal Rule of Evidence (F.R.E.) 609 applies to a prior conviction of the defendant which occurred more than ten years ago. In regard to the prior conviction at issue, the government is absolutely barred from introducing it unless two things occur. First, the government must provide sufficient advance notice to the defendant, in writing, of their intent to use the prior conviction. To be sufficient, the advance notice must provide the defendant with a fair opportunity to contest use of such evidence. F.R.E. 609 (b). Second, evidence of the conviction is absolutely barred unless the court determines, in the interest of justice, "that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." *Id.*

Under the evidence rule governing use of conviction to attack witness' credibility, convictions over ten years old may be admitted only very rarely and in exceptional circumstances. *Zinman v. Black & Decker*, 983 F.2d 431 (2d Cir. 1993). Although the determination whether the probative value substantial outweighs the prejudicial effect of admitting the conviction is within the discretion of the court, a conviction greater than ten years old should be excluded if it "lacks sufficient probative value because of the remoteness in time of convictions." *United States v. Allison*, 414 F.2d 407 (9th Cir. 1969). The requirement that the court make its decision as to admissibility on the record, supported by specific facts and circumstances, is meant to protect the party against whom the conviction is to be introduced. This requirement stems from unrest in the legislative history and a disfavorment of admitting convictions more than ten years old. *See United States v. Mahler*, 579 F.2d 730 (2d Cir. 1978);

5

*See* S.Rep.No.93-1277, 93d Cong., 2d Sess., Reprinted in (1974) U.S. Code Cong. & Admin.News pp. 7051, 7062; *See* The New Federal Rules of Evidence, 65 F.R.D. 266, 267 (1974).

Here, Defendant was convicted of Wire Fraud and served the entirety of his sentence more than ten years ago. The age of the conviction is so remote in time as to lack probative value. Further, the prejudicial effect is very high in this circumstance. The similarity of the offenses, both past and present, both deal with fraud and it is likely a jury will presume the defendant guilty on the current fraud charges based solely on the fact that he was convicted of fraud in the past.

In conclusion, Defendant asks the Court to rule that his prior conviction for wire fraud is inadmissible.

## B. STATEMENTS DEFENDANT MADE TO PRE-TRIAL SERVICES ARE INADMISSIBLE FOR IMPEACHMENT PURPOSES

Although the Second Circuit has allowed introduction of a defendant's statements to pretrial services for impeachment purposes, admission of any alleged specific instances of conduct to attack the defendant's character for truthfulness or untruthfulness may not occur until the Court has found the specific instance to be probative or truthfulness or untruthfulness. F.R.E. 608(b). The Court's inquiry as to probative value is not the only limit on admissibility under 608(b). In attempting to admit specific acts alleged to demonstrate character for untruthfulness, the government must also overcome the protection of Rule 403 and Rule 611. Rule 403 requires that the probative value not be outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury. Rule 611 bars harassment and undue embarrassment.

Here, admission of Defendant's statement would be highly prejudicial by interjecting information about Defendant's consumption of alcohol in a case where that information has no relevance. The risk of prejudice is extremely high and therefore, even if the court were to find the threshold Rule 608(b) inquiry is met, the statements should be inadmissible under the Rule 403 balancing test.

### C. THE RULE OF COMPLETENESS WARRANTS ADMISSION OF CAMP'S OUT-OF-COURT STATEMENTS IF INTRODUCED BY THE GOVERNMENT

The government alleges that out of court statements by the defendant are admissible when offered by the government but inadmissible if offered by the defendant. The claim is that out-of-court statements Defendant Camp gave to the SEC are admissible as non-hearsay when offered by the government, but if the defendant attempts to admit the entirety of his statement, it constitutes inadmissible hearsay. The government's argument that they are entitled to pick and choose which statements are admissible is in violation of F.R.E 106 and would create a misleading impression by taking Defendant Camp's statements out of context.

Rule 106 of the Federal Rules of Evidence provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party and adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

The government states its plan to offer statements that Defendant gave to the SEC which constitute his "explanations for his unusual trading activity." Admission of these statements, in fairness, requires admission of the remainder of the defendant's explanation for his trading activity to comply with F.R.E. 106 and to prevent the government from misleading the jury.

7

## IV. CONCLUSION

In conclusion, the defendant, Gary Camp, asks the Court to consider the above corrections and clarifications to the government's statement of the law and discussion of evidentiary issues.

Dated:   November 8, 2010                                        Respectfully submitted,

s/ James R. McGraw, Esq
James R. McGraw
Attorney for Defendant Camp